# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **MEDLINE INDUSTRIES, LP** | |
| **Plaintiff,** | |
| **v.** | Civil Action No. _____ |
| **C.R. BARD, INC.** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## PLAINTIFF MEDLINE INDUSTRIES, LP'S
## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Medline Industries, LP ("Medline"), through its undersigned counsel, brings this patent infringement action against Defendant C.R. Bard, Inc. ("Bard") as follows:

## NATURE AND BASIS OF THE ACTION

1.      Medline brings this civil action for infringement of United States Patent No. 11,661,219 ("'219 patent"), United States Patent No. 11,661,220 ("'220 patent"), and United States Patent No. 11,684,347 ("'347 patent") (collectively, the "Asserted Patents") under the United States Patent Laws, 35 U.S.C. § 1 *et seq.*

2.      Medline markets its patent-protected ERASE CAUTI® Foley Catheter Tray ("ERASE CAUTI® tray")—a first-in-kind tray used in urinary catheterization procedures.

3.     In 2014, after Bard became aware of Medline's success in the market, Bard launched the competing SureStep™ Foley Catheter trays ("Accused Products").

4.     Bard's manufacture, sale, offer for sale, use, and/or importation into the United States of the Accused Products infringes the Asserted Patents.

5.     Medline brings this action to redress, obtain damages for, and permanently enjoin Bard's willful infringement of the Asserted Patents, which has caused and continues to cause irreparable harm to Medline.

## THE PARTIES

6.     Medline is a corporation organized under the laws of the State of Illinois and is headquartered in Northfield, Illinois.

7.     Bard is a corporation organized under the laws of the State of New Jersey with a principal place of business in Murray Hill, New Jersey.

8.     Bard's Medical Division is headquartered at 8195 Industrial Blvd., Covington, Georgia, within this District.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over Bard.  In a related lawsuit filed by Medline against Bard in this District, Bard admitted that it is subject to the Court's personal jurisdiction.

11.      Bard maintains a place of business in Covington, Georgia, within this District, where Bard does substantial business, including designing, developing, engineering, sterilizing, marketing, distributing, selling, offering to sell, importing, and/or using the Accused Products.

12.     Bard is subject to this Court's general jurisdiction because it has regular and systematic contacts with this forum such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.

13.     Venue is proper in this District.  In the related lawsuit filed by Medline in this District, Bard did not dispute that venue is proper.

14.     Bard has committed acts of infringement of the Asserted Patents in this District.

15.     Bard's employees designed, developed, engineered, and executed marketing strategies for the Accused Products at Bard's facilities in Covington, Georgia.

16.     Bard's employees receive customer orders, make sales, and coordinate the distribution of the Accused Products at Bard's facilities in Covington, Georgia.

17.     Bard's employees at its facilities in Covington, Georgia oversee production and manufacturing specifications for the Accused Products.

18.     Bard sterilizes the Accused Products at its Global Distribution Center in Covington, Georgia.

## THE ASSERTED PATENTS

19.     On May 30, 2023, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '219 patent, entitled "Catheter Tray, Packaging System, Instruction Insert, and Associated Methods," to Medline.  A true and correct copy of the '219 patent is attached as Exhibit A.

20.     Medline is the owner by assignment of the entire right, title, and interest in the '219 patent.

21.     On May 30, 2023, the USPTO duly and legally issued the '220 patent, entitled "Catheter Tray, Packaging System, Instruction Insert, and Associated Methods," to Medline.  A true and correct copy of the '220 patent is attached as Exhibit B.

22.     Medline is the owner by assignment of the entire right, title, and interest in the '220 patent.

23.     On June 27, 2023, the USPTO duly and legally issued the '347 patent, entitled "Catheter Tray, Packaging System, Instruction Insert, and Associated

Methods," to Medline.  A true and correct copy of the '347 patent is attached as Exhibit C.

24.    Medline is the owner by assignment of the entire right, title, and interest in the '347 patent.

25.    Medline is entitled to pre-suit damages arising from Bard's direct, indirect, and willful infringement of the Asserted Patents because Medline has complied with the notice requirement in 35 U.S.C. § 287(a), including by sufficiently marking its ERASE CAUTI® tray on, for example, Medline's website.  *See, e.g.*, Ex. D, https://www.medline.com/media/catalog/Docs/MKT/WP/Patents%2022AUG2023.pdf.

## COUNT I: INFRINGEMENT OF THE '219 PATENT

26.    Medline incorporates by reference the allegations in paragraphs 1 through 25.

27.    Bard has directly infringed, and continues to directly infringe, one or more claims of the '219 patent, including at least claim 1, both literally and under the Doctrine of Equivalents, by making, using, selling, offering to sell, and/or importing into the United States the Accused Products without authority, in violation of 35 U.S.C. § 271(a).

28.    Claim 1 recites "A medical procedure kit, comprising."  To the extent the preamble is limiting, the Accused Products meet this limitation.  The Accused

Products are catheterization kits designed for use in Foley catheterization insertion. *See, e.g.,* Ex. E, http://surestep.bardmedical.com/media/675892/ud-surestep-insertion-removal-procedure.pdf:[1]



29.  Claim 1 recites "a single layer tray comprising a compartment separated by a wall from a lubricating jelly application chamber."  The Accused Products meet this limitation.  The Accused Products include a single layer tray comprising a compartment separated by a wall from a lubricating jelly application chamber, as shown by the image below.

---

[1] All annotations are added unless stated otherwise.



30.    Claim 1 recites "a container of lubricating jelly disposed within the single layer tray."  The Accused Products meet this limitation.  The Accused Products include a container of lubricating jelly disposed within the single layer tray, as shown by the image below.



31.     Claim 1 recites "a coiled tubing coupled between a Foley catheter and a drain bag, wherein the coiled tubing, the drain bag, and the Foley catheter are disposed within the medical procedure kit."   The Accused Products meet this limitation.  The Accused Products include coiled tubing coupled between a Foley catheter and a drain bag, and the coiled tubing, the drain bag, and the Foley catheter are disposed within the medical procedure kit, as shown by the image below.



32.     Claim 1 recites "wherein the lubricating jelly application chamber is configured to receive lubricating jelly from the container of lubricating jelly for lubricating at least a portion of the Foley catheter with the lubricating jelly."   The Accused Products meet this limitation.  The Accused Products include a lubricating jelly application chamber, which is configured to receive lubricating jelly from the container of lubricating jelly for lubricating at least a portion of the Foley catheter with the lubricating jelly.   For example, the Accused Products include the text

printed on the bottom of the lubricating jelly application chamber ("DISPENSE

LUBE").



33.    Claim 1 recites "the container of lubricating jelly comprising a syringe

containing the lubricating jelly."  The Accused Products meet this limitation.  The

container of lubricating jelly in the Accused Products includes a syringe containing

the lubricating jelly, as shown by the image below.



34.     Claim 1 recites "the syringe situated within the lubricating jelly application chamber."  The Accused Products meet this limitation.  The syringe of lubricating jelly in the Accused Products is within the lubricating jelly application chamber, as shown by the image below.



35.     Bard has induced, and continues to induce, infringement of one or more claims of the '219 patent under 35 U.S.C. § 271(b), including at least claim 1, because it took affirmative acts to encourage direct infringement of the '219 patent by others, such as clinicians and customers, with knowledge that the induced acts constitute patent infringement.

36.     On information and belief, Bard has been aware of the '219 patent since the patent issued on May 30, 2023.  Medline provided notice to Bard of the application that issued as the '219 patent as early as October 21, 2021, as part of *C.R. Bard, Inc. v. Medline Indus., LP*, IPR2019-00223.  Ex. F, IPR2019-00223 (Oct.

1, 2021) (Patent Owner's Updated Mandatory Notices).  Further, on information and belief, Bard tracks Medline's patent portfolio, including the '219 patent, including in connection with the pending patent infringement litigations between Medline and Bard discussed below.  In addition, Medline marked its products with the number of the '219 patent on its website, including in compliance with 35 U.S.C. § 287.  Alternatively, at minimum, Bard has been aware of the '219 patent since the filing and service of this Complaint.

37.    Bard has taken, and continues to take, active steps to encourage direct infringement by others, such as clinicians and customers.  Specifically, Bard has taken affirmative acts to bring about direct infringement of the '219 patent by others, such as customers and clinicians, including making the Accused Products, selling the Accused Products to its customers, promoting the Accused Products, advertising infringing uses of the Accused Products, encouraging others to use the Accused Products, and instructing others on how to engage in an infringing use of the Accused Products.  For instance, on an affiliated website, Bard states the Accused Products "w[ere] designed to help provide a consistent step-by-step process to guide the clinician through the Foley insertion process by displaying the recommended steps directly on the tray."    Ex.  G,  https://www.bd.com/en-us/products-and-solutions/products/product-families/surestep--foley-tray.

38.     Bard's customers directly infringe the '219 patent in the United States, including by using the Accused Products, which literally infringe the '219 patent as alleged above.

39.     Bard took the affirmative acts identified above specifically intending that others, such as clinicians and customers, directly infringe the '219 patent in the United States, and knew that the induced acts constitute infringement of the '219 patent.  For example, on information and belief, Bard has sold the Accused Products to customers to use those products in ways that infringe the '219 patent, and Bard knew that clinicians and customers would be infringing the patent by using the Accused Products as instructed.  Further, Bard expects clinicians and customers to use the Accused Products in a manner consistent with Bard's instructions. Alternatively, at minimum, Bard willfully blinded itself to the direct infringement of others, including clinicians and customers.

40.     Bard has contributed to, and continues to contribute to, the direct infringement by others of one or more claims of the '219 patent, including at least claim 1, under 35 U.S.C. § 271(c).  As alleged above, on information and belief, Bard has been aware of the '219 patent since the patent issued on May 30, 2023 and, at minimum, since the filing and service of this Complaint.  Bard has offered to sell and sold, and continues to offer for sale and sell, the Accused Products in the United States.  The Accused Products are not staple articles of commerce suitable for

substantial non-infringing use, and have no substantial non-infringing uses.  Further, as alleged above, third parties such as clinicians and Bard's customers directly infringe the '219 patent in the United States by using the Accused Products, which literally infringe the '219 patent as alleged above.

41.    Medline has been irreparably harmed by Bard's infringement of the '219 patent and, at minimum, Medline should obtain both pre-suit and post-suit damages adequate to compensate Medline for Bard's infringement, including lost profits but in no event less than a reasonable royalty.

42.    Bard's infringement of the '219 patent has been and continues to be willful.  As alleged above, on information and belief, Bard has been aware of the '219 patent since at least May 30, 2023,  yet has engaged in infringement of the '219 patent that is intentional, malicious, in bad faith, deliberate, egregious, consciously wrongful, and/or flagrant.  Further, this is the fifth action Medline has filed to address Bard's deliberate infringement of Medline patents since 2014.[2]  Bard has therefore had knowledge of Medline's patent portfolio covering Foley catheter trays, technologies, and methods of use for nearly ten years, yet continues to infringe. Moreover, Medline provided notice to Bard of the applications that issued as the

---

[2] *Medline Indus., LP v. C.R. Bard, Inc.*, No. 1:14-cv-03618 (N.D. Ill. May 16, 2014) ("*Medline I*"); *Medline Indus., LP v. C.R. Bard, Inc.*, No. 1:16-cv-03529 (N.D. Ill. Mar. 23, 2016) ("*Medline II*"); *Medline Indus., LP v. C.R. Bard, Inc.*, No. 1:17-cv-07216 (N.D. Ill. Oct. 5, 2017) ("*Medline III*"); *Medline Indus., LP v. C.R. Bard, Inc.*, 1:20-cv-03981 (N.D. Ga. Sept. 25, 2020) ("*Medline IV*").

Asserted Patents as early as October 21, 2021, as part of *C.R. Bard, Inc. v. Medline Indus., LP*, IPR2019-00223.  *See* Ex. F.

43.     In addition, Bard had notice of the issued Asserted Patents at least because Medline's patent information webpage lists the patents covering the ERASE CAUTI® tray, including the Asserted Patents.  *See* Ex. D.  And, on information and belief, Bard actively monitors the websites and patent portfolios of its competitors (including Medline), yet continues to infringe.

44.     Because Bard's infringement has been and continues to be willful, Medline should obtain enhanced damages under 35 U.S.C. § 284 and a finding that this case is exceptional.

45.     Medline has been irreparably harmed by Bard's intentional infringement of the '219 patent, including but not limited to lost market share, lost sales, and harm to customer goodwill and long-term customer relationships. Medline's ERASE CAUTI® tray directly competes with the Accused Products. Moreover, Bard's infringement of the '219 patent has threatened the patent's value because Bard's conduct results in Medline's loss of its lawful patent rights to exclude others from making, using, selling, offering to sell, and/or importing into the United States the Accused Products.

46.     Bard will derive an unfair competitive advantage from using Medline's patented technology in the '219 patent without paying adequate compensation for

such use.  Accordingly, unless and until Bard's continued acts of infringement are enjoined, Medline will suffer irreparable harm for which there is no adequate remedy at law.  Alternatively, and without conceding that any harm from the infringement is not irreparable, Medline should obtain a post-verdict or ongoing royalty adequate to compensate it for any post-verdict infringement of the '219 patent.

## COUNT II: INFRINGEMENT OF THE '220 PATENT

47.   Medline incorporates by reference the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

48.   Bard has directly infringed, and continues to directly infringe, one or more claims of the '220 patent, including at least claim 8, both literally and under the Doctrine of Equivalents, by making, using, selling, offering to sell, and/or importing into the United States the Accused Products without authority, in violation of 35 U.S.C. § 271(a).

49.   Claim 8 recites "A medical procedure kit, comprising."  To the extent the preamble is limiting, the Accused Products meet this limitation.  The Accused Products are catheterization kits, designed for use in a medical procedure, specifically Foley catheterization insertion.  *See, e.g.*, Ex. E:



50.     Claim 8 recites "a single layer tray comprising a first compartment defining a lubricating jelly application chamber and a second compartment separated from the first compartment by a wall."  The Accused Products meet this limitation. The Accused Products are single layer trays including a first compartment, defining a lubricating jelly application chamber, and a second compartment separated from the first compartment by a wall, as shown by the image below.



51.     Claim 8 recites "a container of lubricating jelly disposed within the single layer tray."  The Accused Products meet this limitation.  The single layer tray

of the Accused Products includes a container of lubricating jelly, as shown by the image below.



52.     Claim 8 recites "a coiled tubing coupled between a fluid drain bag and a Foley catheter."  The Accused Products meet this limitation.  The Accused Products include coiled tubing coupled between the fluid drain bag and Foley catheter, as shown by the image below.



53.     Claim 8 recites "at least one layer of wrap material enclosing the single layer tray within one or more folds of the at least one layer of wrap material." The Accused Products meet this limitation. The Accused Products have at least one layer of wrap material enclosing the single layer tray within one or more folds of the at least one layer of wrap material, as shown by the image below.



54.     Claim 8 recites "an outer packaging disposed about both the single layer tray and the at least one layer of wrap material." The Accused Products meet this limitation. The Accused Products have an outer packaging disposed about both the single layer tray and the at least one layer of wrap material, as shown by the image below.

18



55.    Claim 8 recites "wherein: the coiled tubing, the fluid drain bag, and the Foley catheter are disposed within the medical procedure kit."  The Accused Products meet this limitation.  The coiled tubing, fluid drain bag, and Foley catheter are disposed within the Accused Products, as shown by the image below.



56.    Claim 8 recites "the lubricating jelly application chamber is configured to receive lubricating jelly from the container of lubricating jelly for lubricating at least a portion of the Foley catheter with the lubricating jelly."  The Accused Products meet this limitation.  The lubricating jelly application chamber in the Accused Products are configured to receive lubricating jelly from the container of lubricating jelly for lubricating at least a portion of the Foley catheter with the lubricating jelly, as shown by the image below.



57.    Bard has induced, and continues to induce, infringement of one or more claims of the '220 patent under 35 U.S.C. § 271(b), including at least claim 8, because it took affirmative acts to encourage direct infringement of the '220 patent

by others, such as clinicians and customers, with knowledge that the induced acts constitute patent infringement.

58.     On information and belief, Bard has been aware of the '220 patent since the patent issued on May 30, 2023.   Medline provided notice to Bard of the application that issued as the '220 patent as early as October 21, 2021, as part of *C.R. Bard, Inc. v. Medline Indus., LP*, IPR2019-00223.   Ex. F.   Further, on information and belief, Bard tracks Medline's patent portfolio, including the '220 patent, including in connection with the pending patent infringement litigations between Medline and Bard discussed below.   In addition, Medline marked its products with the number of the '220 patent on its website, including in compliance with 35 U.S.C. § 287.   Alternatively, at minimum, Bard has been aware of the '220 patent since the filing and service of this Complaint.

59.     Bard has taken, and continues to take, active steps to encourage direct infringement by others, such as clinicians and customers.   Specifically, Bard has taken affirmative acts to bring about direct infringement of the '220 patent by others, such as customers and clinicians, including making the Accused Products, selling the Accused Products to its customers, promoting the Accused Products, advertising infringing uses of the Accused Products, encouraging others to use the Accused Products, and instructing others on how to engage in an infringing use of the Accused Products.   For instance, on an affiliated website, Bard states the Accused Products

"w[ere] designed to help provide a consistent step-by-step process to guide the clinician through the Foley insertion process by displaying the recommended steps directly on the tray."  Ex. G.

60.    Bard's customers directly infringe the '220 patent in the United States, including by using the Accused Products, which literally infringe the '220 patent as alleged above.

61.    Bard took the affirmative acts identified above specifically intending that others, such as clinicians and customers, directly infringe the '220 patent in the United States, and knew that the induced acts constitute infringement of the '220 patent.  For example, on information and belief, Bard has sold the Accused Products to customers to use those products in ways that infringe the '220 patent, and Bard knew that clinicians and customers would be infringing the patent by using the Accused Products as instructed.  Further, Bard expects clinicians and customers to use the Accused Products in a manner consistent with Bard's instructions.  Alternatively, at minimum, Bard willfully blinded itself to the direct infringement of others, including clinicians and customers.

62.    Bard has contributed to, and continues to contribute to, the direct infringement by others of one or more claims of the '220 patent, including at least claim 8, under 35 U.S.C. § 271(c).  As alleged above, on information and belief, Bard has been aware of the '220 patent since the patent issued on May 30, 2023 and,

at minimum, since the filing and service of this Complaint.  Bard has offered to sell and sold, and continues to offer for sale and sell, the Accused Products in the United States.  The Accused Products are not staple articles of commerce suitable for substantial non-infringing use, and have no substantial non-infringing uses.  Further, as alleged above, third parties such as clinicians and Bard's customers directly infringe the '220 patent in the United States by using the Accused Products, which literally infringe the '220 patent as alleged above.

63.    Medline has been irreparably harmed by Bard's infringement of the '220 patent and, at minimum, Medline should obtain both pre-suit and post-suit damages adequate to compensate Medline for Bard's infringement, including lost profits but in no event less than a reasonable royalty.

64.    Bard's infringement of the '220 patent has been and continues to be willful.  As alleged above, on information and belief, Bard has been aware of the '220 patent since at least May 30, 2023, yet has engaged in infringement of the '220 patent that is intentional, malicious, in bad faith, deliberate, egregious, consciously wrongful, and/or flagrant.  Further, this is the fifth action Medline has filed to address Bard's deliberate infringement of Medline patents since 2014.[3]  Bard has therefore had knowledge of Medline's patent portfolio covering Foley catheter trays, technologies, and methods of use for nearly ten years, yet continues to infringe.

---

[3] *See supra* note 2.

Moreover, Medline provided notice to Bard of the applications that issued as the Asserted Patents as early as October 21, 2021, as part of *C.R. Bard, Inc. v. Medline Indus., LP*, IPR2019-00223. *See* Ex. F.

65.    In addition, Bard had notice of the issued Asserted Patents at least because Medline's patent information webpage lists the patents covering the ERASE CAUTI® tray, including the Asserted Patents. *See* Ex. D.  And, on information and belief, Bard actively monitors the websites and patent portfolios of its competitors (including Medline), yet continues to infringe.

66.    Because Bard's infringement has been and continues to be willful, Medline should obtain enhanced damages under 35 U.S.C. § 284 and a finding that this case is exceptional.

67.    Medline has been irreparably harmed by Bard's intentional infringement of the '220 patent, including but not limited to, lost market share, lost sales, and harm to customer goodwill and long-term customer relationships. Medline's ERASE CAUTI® tray directly competes with the Accused Products. Moreover, Bard's infringement of the '220 patent has threatened the patent's value because Bard's conduct results in Medline's loss of its lawful patent rights to exclude others from making, using, selling, offering to sell, and/or importing into the United States the Accused Products.

68.    Bard will derive a competitive advantage from using Medline's patented technology in the '220 patent without paying compensation for such use. Accordingly, unless and until Bard's continued acts of infringement are enjoined, Medline will suffer irreparable harm for which there is no adequate remedy at law. Alternatively, and without conceding that any harm from the infringement is not irreparable, Medline should obtain a post-verdict or ongoing royalty adequate to compensate it for any post-verdict infringement of the '220 patent.

## COUNT III: INFRINGEMENT OF THE '347 PATENT

69.    Medline incorporates by reference the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70.    Bard has directly infringed, and continues to directly infringe, one or more claims of the '347 patent, including at least claim 1, both literally and under the Doctrine of Equivalents, by making, using, selling, offering to sell, and/or importing into the United States the Accused Products without authority, in violation of 35 U.S.C. § 271(a).

71.    Claim 1 recites "A medical procedure kit, comprising."  To the extent the preamble is limiting, the Accused Products meet this limitation.  The Accused Products are catheterization kits, designed for use in a medical procedure, specifically Foley catheterization insertion.  *See, e.g.*, Ex. E:



72.     Claim 1 recites "a single layer tray having a first compartment for receiving syringes and a second compartment for receiving a medical assembly." The Accused Products meet this limitation.  The Accused Products are single layer trays with a first compartment for receiving the first syringe and the second syringe, and a second compartment for receiving the medical assembly, as shown by the image below.



73.     Claim 1 recites "a first syringe and a second syringe disposed within the first compartment."  The Accused Products include both the first syringe and second syringe within the first compartment, as shown by the image below.

26



74.    Claim 1 recites "the medical assembly disposed in the second compartment, wherein the medical assembly comprises a coiled tubing coupled between a fluid drain bag and a Foley catheter."  The Accused Products meet this limitation.   The medical assembly in the second compartment of the Accused Products includes a coiled tubing coupled between a fluid drain bag and a Foley catheter, as shown by the image below.



75.    Claim 1 recites "wherein one of the first syringe or the second syringe contains lubricating jelly and another of the first syringe or the second syringe contains water."  The Accused Products meet this limitation.  The Accused Products include two syringes, one containing lubricating jelly and another containing water, as shown by the image below.



76.    Claim 1 recites "wherein the first compartment and the second compartment are adjacent and separated by a barrier."  The Accused Products meet this limitation.  The Accused Products include a first compartment which is next to, and separated by a barrier from the second compartment, as shown by the image below.



77.     Bard has induced, and continues to induce, infringement of one or more claims of the '347 patent under 35 U.S.C. § 271(b), including at least claim 1, because it took affirmative acts to encourage direct infringement of the '347 patent by others, such as clinicians and customers, with knowledge that the induced acts constitute patent infringement.

78.     On information and belief, Bard has been aware of the '347 patent since the patent issued on June 27, 2023.  Medline provided notice to Bard of the application that issued as the '347 patent as early as October 21, 2021, as part of *C.R. Bard, Inc. v. Medline Indus., LP*, IPR2019-00223.  Ex. F.  Further, on information and belief, Bard tracks Medline's patent portfolio, including the '347 patent, including in connection with the pending patent infringement litigations between Medline and Bard discussed below.  In addition, Medline marked its

products with the number of the '347 patent on its website, including in compliance with 35 U.S.C. § 287.  Alternatively, at minimum, Bard has been aware of the '347 patent since the filing and service of this Complaint.

79.    Bard has taken, and continues to take, active steps to encourage direct infringement by others, such as clinicians and customers.  Specifically, Bard has taken affirmative acts to bring about direct infringement of the '347 patent by others, such as customers and clinicians, including making the Accused Products, selling the Accused Products to its customers, promoting the Accused Products, advertising infringing uses of the Accused Products, encouraging others to use the Accused Products, and instructing others on how to engage in an infringing use of the Accused Products.  For instance, on an affiliated website, Bard states the Accused Products "w[ere] designed to help provide a consistent step-by-step process to guide the clinician through the Foley insertion process by displaying the recommended steps directly on the tray."  Ex. G.

80.    Bard's customers directly infringe the '347 patent in the United States, including by using the Accused Products, which literally infringe the '347 patent as alleged above.

81.    Bard took the affirmative acts identified above specifically intending that others, such as clinicians and customers, directly infringe the '347 patent in the United States, and knew that the induced acts constitute infringement of the '347

patent.  For example, on information and belief, Bard has sold the Accused Products to customers to use those products in ways that infringe the '347 patent, and Bard knew that clinicians and customers would be infringing the patent by using the Accused Products as instructed.  Further, Bard expects clinicians and customers to use the Accused Products in a manner consistent with Bard's instructions. Alternatively, at minimum, Bard willfully blinded itself to the direct infringement of others, including clinicians and customers.

82.    Bard has contributed to, and continues to contribute to, the direct infringement by others of one or more claims of the '347 patent, including at least claim 1, under 35 U.S.C. § 271(c).  As alleged above, on information and belief, Bard has been aware of the '347 patent since the patent issued on June 27, 2023 and, at minimum, since the filing and service of this Complaint.  Bard has offered to sell and sold, and continues to offer for sale and sell, the Accused Products in the United States.  The Accused Products are not staple articles of commerce suitable for substantial non-infringing use, and have no substantial non-infringing uses.  Further, as alleged above, third parties such as clinicians and Bard's customers directly infringe the '347 patent in the United States by using the Accused Products, which literally infringe the '347 patent as alleged above.

83.    Medline has been irreparably harmed by Bard's infringement of the '347 patent and, at minimum, Medline should obtain both pre-suit and post-suit

damages adequate to compensate Medline for Bard's infringement, including lost profits but in no event less than a reasonable royalty.

84.    Bard's infringement of the '347 patent has been and continues to be willful.  As alleged above, on information and belief, Bard has been aware of the '347 patent since at least June 27, 2023, yet has engaged in infringement of the '347 patent that is intentional, malicious, in bad faith, deliberate, egregious, consciously wrongful, and/or flagrant.  Further, this is the fifth action Medline has filed to address Bard's deliberate infringement of Medline patents since 2014.[4]  Bard has therefore had knowledge of Medline's patent portfolio covering Foley catheter trays, technologies, and methods of use for nearly ten years, yet continues to infringe. Moreover, Medline provided notice to Bard of the applications that issued as the Asserted Patents as early as October 21, 2021, as part of *C.R. Bard, Inc. v. Medline Indus., LP*, IPR2019-00223.  *See* Ex. F.

85.    In addition, Bard had notice of the issued Asserted Patents at least because Medline's patent information webpage lists the patents covering the ERASE CAUTI® tray, including the Asserted Patents.  *See* Ex. D.  And, on information and belief, Bard actively monitors the websites and patent portfolios of its competitors (including Medline), yet continues to infringe.

---

[4] *See supra* note 2.

86.    Because Bard's infringement has been and continues to be willful, Medline should obtain enhanced damages under 35 U.S.C. § 284 and a finding that this case is exceptional.

87.    Medline has been irreparably harmed by Bard's intentional infringement of the '347 patent, including but not limited to lost market share, lost sales, and harm to customer goodwill and long-term customer relationships. Medline's ERASE CAUTI® tray directly competes with the Accused Products. Moreover, Bard's infringement of the '347 patent has threatened the patent's value because Bard's conduct results in Medline's loss of its lawful patent rights to exclude others from making, using, selling, offering to sell, and/or importing into the United States the Accused Products.

88.    Bard will derive a competitive advantage from using Medline's patented technology in the '347 patent without paying compensation for such use. Accordingly, unless and until Bard's continued acts of infringement are enjoined, Medline will suffer irreparable harm for which there is no adequate remedy at law. Alternatively, and without conceding that any harm from the infringement is not irreparable, Medline should obtain a post-verdict or ongoing royalty adequate to compensate it for any post-verdict infringement of the '347 patent.

## **REQUEST FOR RELIEF**

WHEREFORE, Medline respectfully requests the following relief:

A.    Judgment that Bard is liable for direct and/or indirect infringement of the '219, '220, and '347 patents;

B.    Damages that are adequate to compensate Medline for injuries resulting from Bard's infringement of the '219, '220, and '347 patents (including pre-suit damages), together with pre-judgment and post-judgment interest and costs;

C.    Judgment and order holding that Bard's infringement was willful, pursuant to 35 U.S.C. § 284, and awarding enhanced damages;

D.    An accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through final judgment;

E.    Preliminary and permanent injunctions against Bard, its officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of infringement of the '219, '220, and '347 patents (or, alternatively, and without conceding that any harm due to Bard's infringement is not irreparable, a post-verdict or ongoing royalty adequate to compensate Medline for any post-verdict infringement);

F.      An award of attorneys' fees based on finding this action an exceptional

        case pursuant to 35 U.S.C. § 285, including prejudgment interest on

        such fees;

G.      Costs and expenses in this action; and

H.      Such other relief as the Court deems just and equitable.

## **<u>JURY DEMAND</u>**

Under Federal Rule of Civil Procedure 38, Medline respectfully demands a

trial by jury of any issues triable of right by a jury.

Dated:  December 18, 2023          Respectfully submitted,


                                   */s/ Daniel A. Kent*
                                   Daniel A. Kent
                                   Georgia Bar No. 415110
                                   KENT & RISLEY LLC
                                   5755 N Point Pkwy Ste 57
                                   Alpharetta, GA 30022
                                   Phone: (404) 585-4214
                                   Facsimile: (404) 829-2412
                                   dankent@kentrisley.com

                                   Henry D. Fellows, Jr.
                                   Georgia Bar No. 257825
                                   Ethan M. Knott
                                   Georgia Bar No. 737481
                                   FELLOWS LABRIOLA LLP
                                   Suite 2400 Harris Tower
                                   233 Peachtree Street, N.E.
                                   Atlanta, GA 30303
                                   Phone: (404) 586-9200
                                   Facsimile: (404) 586-9201
                                   hfellows@fellab.com
                                   eknott@fellab.com

                                   *Of counsel:*

                                   Gregory Sobolski (*pro hac vice to be filed*)
                                   Gabrielle LaHatte (*pro hac vice to be filed*)
                                   Brett M. Sandford (*pro hac vice to be filed*)
                                   LATHAM & WATKINS LLP
                                   505 Montgomery St., Ste. 2000
                                   San Francisco, CA 94111
                                   Phone: (415) 391-0600
                                   Facsimile: (415) 395-8095
                                   greg.sobolski@lw.com
                                   gabrielle.lahatte@lw.com
                                   brett.sandford@lw.com

Terra L. Reynolds (*pro hac vice to be filed*)
LATHAM & WATKINS LLP
330 North Wabash Ave. Ste. 2800
Chicago, IL 60611
Phone: (312) 876-7700
Facsimile: (312) 993-9767
terra.reynolds@lw.com

*Counsel for Plaintiff Medline Industries, LP*